IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**STANLEY M. STROTHER,**

    Petitioner,

vs.                                    **CASE NO. 4:03CV19-SPM/AK**

**JAMES CROSBY,**[1]

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 7.  Respondent has answered the petition, Doc. 13, and Petitioner has filed his reply.  Doc. 14.  This matter is therefore in a posture for decision.  Having carefully considered the matter, the Court recommends that the habeas relief be denied.

---

[1] Michael Moore is no longer the Secretary of the Department of Corrections, and James Crosby, the current Secretary, is hereby substituted for him.

**BACKGROUND**

On or about May 14, 1997, Petitioner Stanley M. Strother was charged in a one-count information with a scheme to defraud under Fla. Stat. Ann. § 817.034(4)(a)1. Doc. 13, App. at 121.  More specifically, Petitioner was charged as follows:

> STANLEY MARTIN STOTHER, on or after the 18th day of October, 1993, and on or before the 16th day of April, 1997, within St. Johns County, Florida, while he was in a position of trust and confidence or he had a business relationship with [the victim], did then and there unlawfully engage in a systematic and ongoing course of conduct with the intent to defraud one or more persons, or with the intent to obtain property from [the victim] or other persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act, and did obtain property in an aggregate value of Fifty Thousand Dollars ($50,000) or more.

*Id*.

At trial, the victim testified that Petitioner became her insurance agent in late 1992.  *Id.* at 20.  Over the course of their relationship, she, Petitioner, and his family became friends.  *Id*.  In October, 1993, Petitioner began soliciting loans from the victim for business and personal expenses.  *Id.* at 20-21.  In return, Petitioner was to repay the loan monthly and to cover the premiums for the victim's supplemental Medicare insurance.  *Id*.  The amount which the victim paid out to Petitioner from 1993 through 1995 was over $190,000.00.  *Id.* at 129.  The last check which the victim wrote to Petitioner was dated May 26, 1995.  *Id.* at 105.  The victim did not talk to the police, however, until April, 1997, because she "trusted [Petitioner] enough that...he would pay [her] back."  Doc. 7, Attach. at 12; *see also id.* at 10.[2]

---

[2]Petitioner did not number the attached pages; however, on the back of each page is a pencilled number, which the Court will use for reference even though the numbers are in reverse chronological order.

**No. 4:03cv19-spm/ak**

The jury convicted Petitioner of "organized fraud via a scheme to defraud of an aggregate value of $50,000.00 or more as charged," Doc. 13, App. at 123, and Petitioner was sentenced to fifteen years imprisonment. *Id.* at 125. Though the recommended sentence was two and one-half to three and one-half years, the sentencing court found that even the discretionary sentence of four and one-half years was not "sufficient to adequately punish [Petitioner] for his actions." *Id.* at 129. In departing from the recommended sentence, the court stated:

> [Petitioner] used his position as insurance man for [the victim], a widow, approximately 75 years of age, by endearing himself to the victim including running errands for her, taking her lunch, and developed her trust to such an extent that he induced her to advance him or his ill-fated insurance company monies, to the tune of approximately $190,297.00. Part of these monies were used to set up an annuity by [Petitioner]. He would call her at home and then stop by her residence when no one else but him and the victim were present. He would then take monies out of the annuity and use for his own purposes.
>
> Pursuant to Florida Statute...the victim...as a widow was especially vulnerable due to her age....She trusted [Petitioner] as her "insurance agent" and he took advantage of her trust. It is clear to the Court that his aforementioned actions of taking her shopping, etc. were designed to develop and exploit the trust of an elderly person....
>
> * * *
>
> The Court finds further that Florida Statute 921.0016(3)(n) applies. [Petitioner's] actions did result in a substantial economic hardship to [the victim]. He divested here of almost 100% of her life savings. This "scheme to defraud" involved multiple incidents with this victim...namely there were numerous cash and check advances given to [Petitioner] totaling more than $190,000.00 and these occurred over approximately a five (5) year period. [Petitioner] took advantage of her knowing she had little or no family and endeared himself to her by "assisting her" in a highly sophisticated scheme of his. Further, [Petitioner] used his position as an insurance salesperson and insurance man for the victim, a position of trust, confidence and a fiduciary relationship to her, to commit these offenses. Had he not been her insurance agent, it is highly unlikely the

**No. 4:03cv19-spm/ak**

> victim would have lost her life savings in this matter. As such, Florida Statute 921.0016(3)(j) and (n)(1), (2), (3) all are applicable in this matter, and the Court relies on these statutes singularly and collectively as grounds to depart the recommended sentence, by clear and convincing evidence.

*Id.* at 129-130.

Petitioner was received by the Florida Department of Corrections on June 24, 1998. *Id.* at 117. In setting Petitioner's minimum release date and tentatively awarding him incentive gain-time, FDOC applied Fla. Stat. Ann. § 944.275(4)(b)3, which provides:

> For sentences imposed for offenses committed on or after October 1, 1995, the department may grant up to 10 days per month of incentive gain-time, except that no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed.

Fla. Stat. Ann. § 944.275(4)(b)3.

Petitioner appealed his conviction and sentence, raising various issues via both an *Anders* brief and his own *pro se* brief. Doc. 13, App. at 4-10 & 15-32. In neither brief did Petitioner directly challenge the sentencing court's conclusion that the crime had occurred over approximately a five-year period, although Petitioner did maintain in his *pro se* brief that because his crimes were committed from 1993 through 1995, the court should have used a 1993 score sheet, rather than the 1997 score sheet which caused him "to Have to Serve 85% of His Sentence." *Id.* at 4. The court of appeal summarily affirmed. *Id.* at 1.

Petitioner then filed a petition for writ of habeas corpus. *Id.* at 39-60. On this occasion, he made absolutely no mention about the court's use of a five-year time frame for the commission of the crime. The petition was summarily denied. *Id.* at 37.

**No. 4:03cv19-spm/ak**

Petitioner next filed a Rule 3.850 motion for post-conviction relief, raising only an issue of counsel's ineffectiveness in failing to move to recuse the sentencing judge. *Id.* at 74-87. The motion was denied, *id.* at 69-70, and that decision was affirmed on appeal. *Id.* at 61.

Petitioner then filed a petition for writ of mandamus, arguing that FDOC had improperly calculated his gain time. *Id.* at 91-106. More specifically, he maintained that based on the dates in the arrest report and the date of the last check written by the victim to Petitioner, he should have been awarded gain time based on § 944.275(4)(b)(1), which allows for an award of "up to 20 days of incentive gain-time" for sentences imposed for offenses committed before January 1, 1994. *Id.* at 92. In Petitioner's estimation, the last offense occurred on May 26, 1995, rather than April 16, 1997, as charged in the information, and thus, he should not have been subject to the 85 percent gain time statute. *Id.* After considering the State's response, the Court found:

> This Court concludes that the 85% statute...applies to the sentence imposed for a scheme to defraud. A continuing offense is not committed until the course of conduct has terminated or the defendant's complicity in the course of conduct has terminated. See § 775.15(4). Where a continuing offense is charged, an inmate's entitlement to gaintime is based upon the gaintime statute in effect on the date the criminal activity ceased. See Shurman v. Moore, 783 So.2d 1086 (Fla. 1st DCA 2001). A scheme to defraud is a continuing offense. See § 817.034(3)(d); see also State v. Grabarnick, 414 So.2d 1144 (Fla. 3rd DCA 1982) (where the crime is one aimed at a scheme to defraud, the purpose is to punish a person more harshly where the unlawful conduct is continuous, rather than a single act). The fraud the petitioner was found guilty of committing did not terminate until October 16, 1997. As a result, the scheme to defraud [which] [Petitioner] was convicted of was not committed until October 16,

**No. 4:03cv19-spm/ak**

> 1997.[3]  Section 944.275(4)(b)3 applies to all sentences imposed for offenses that were committed on or after October 1, 1995.
>     The decisions of <u>Duer v. Moore</u>, 765 So.2d 743 (Fla. 1st DCA 2000) and <u>Gilbert v. State</u>, are distinguishable because those cases addressed crimes that were not continuing in nature.

*Id.* at 142-43.  Petitioner's motion for rehearing was subsequently denied as untimely and as an improper reargument of the claims raised in the original petition.  *Id.* at 144-45.  Petitioner then sought a writ of certiorari, which was summarily denied.  *Id.* at 146.

On this occasion, Petitioner argues that FDOC erred in applying the 85 percent gain time statute to him because his offense was "completed and abandoned" no later than October 26, 1995, when "the last check issued was anticipated."  Doc. 7 at 5-5A.  Petitioner also claims a violation of due process based on the state court's denial of his motion for rehearing on the motion for writ of mandamus.  *Id.* at 6-6A.

In response, Respondent concedes that the petition is timely and maintains that Petitioner has exhausted the claim regarding the application of the 85 percent gaintime statute.  As to the second claim, Respondent maintains that exhaustion is not an issue because the claim does not present a federal claim.  In any event, according to Respondent, Petitioner is not entitled to relief.

---

[3]The use of the October date appears to be a scrivener's error, as the concluding date charged in the information was **April** 16, 1997, not **October** 16, 1997, which is approximately the same time that the victim went to police with her complaint. Furthermore, as Petitioner points out, by October, 1997, he was already in jail on these charges.

**No. 4:03cv19-spm/ak**

**DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of

**No. 4:03cv19-spm/ak**

the prisoner's case." *Id.* at 413.  The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 412.

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The fact that the state court did not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002).

A "habeas petition grounded on issues of state law provides no basis for habeas relief."  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).  With regard to state sentencing guidelines, the Eleventh Circuit has "consistently...held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures."  *Id*. "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" *Id*. (citation omitted).

Regardless of how Petitioner tries to frame it, his claim that the state court violated his due process rights in denying his motion for rehearing is without merit. The court considered Petitioner's arguments, in the first instance and on rehearing, and found nothing in them to warrant relief or to justify a change in its original decision.

**No. 4:03cv19-spm/ak**

Petitioner was then allowed to challenge those decisions via a certiorari petition, and that is all the due process to which he is entitled.  The claim is without merit.

As to the remaining claim, i.e., that the wrong gaintime statute was applied to Petitioner's sentence thereby resulting in an impermissibly longer sentence, the Court likewise finds no due process violation.  The state court made a factual finding that the scheme to defraud the victim lasted approximately five years.  Although the sentencing court did not elaborate, it is clear to this Court that in framing that five-year period, the court believed the scheme to defraud the victim began in late 1992, when Petitioner became the victim's insurance agent and concluded in April, 1997, when the victim lost faith and trust in Petitioner and went to the police to file a complaint.  The court plainly did not think that the scope of this scheme was limited to the dates on the checks which the victim wrote to Petitioner.  Similarly, the court which examined Petitioner's mandamus petition made a factual determination based on Florida state law that the scheme to defraud was a continuing offense which did not terminate until the victim complained to police in 1997, and thus, FDOC applied the proper gaintime statute to Petitioner's sentence.  In this Court's opinion, the record amply supports the courts' determinations that this scheme continued beyond the dates on the checks and that it did not conclude until the victim reported it in 1997.  Thus, Petitioner is not entitled to habeas relief on this claim.

In his reply Petitioner raises the issues that there was in improper variance in the dates in the information and the proof at trial and that applying the 85% statute to him violates the Ex Post Facto Clause.  However, each of these arguments is without merit

**No. 4:03cv19-spm/ak**

as it would require this Court to find that the state courts had made an unreasonable determination of the facts in light of the evidence presented at trial.  As indicated *supra*, this Court does not believe that occurred in this case.

In light of the foregoing, it is respectfully **RECOMMENDED** that the amended petition for writ of habeas corpus, Doc. 7, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this  **5TH**  day of May, 2005.


s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 4:03cv19-spm/ak**